<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**</u>

| | |
|---|---|
| BALBIR KAUR and BALDEV SINGH, | |
| Plaintiffs, | |
| v. | Civil Action No. 06-2425 (JAG) |
| STANDEX INTERNATIONAL CORP., DICKERMAN POWER CUT-OFF SAWS, EVERETT INDUSTRIES, INC., B.F. PERKINS DIVISION OF ROEHLENS INDUSTRIES, IR INTERNATIONAL, ABC CORP. 1-3 (names being fictitious) & JOHN DOES 1-3 (names being fictitious), | **OPINION** |
| Defendants. | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion of defendants, Standex International Corporation and certain of it subsidiaries, IR International, Inc., and BF Perkins, Inc.[1], (collectively "Defendants"), for summary judgment, pursuant to FED. R. CIV. P. 56, against plaintiff, Balbir Kaur ("Plaintiff Kaur"), and her husband, Baldev Singh, (collectively, "Plaintiffs"). For the reasons set forth below, Defendants' motion is granted in part, and denied in part.

---

[1] Defendant BF Perkins was improperly named as B.F. Perkins Division of Roehlens Industries.

1

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. The instant action stems from an injury sustained by Plaintiff Kaur to her right hand, in the course of her employment with Petro Extrusion Technologies ("Petro"), a plastic extrusion company in Garwood, New Jersey. (Defendants' Statement of Material Facts ("Def. 56.1 Stmt."), ¶ 2; Plaintiffs' Response to Defendants' Statement of Material Facts ("Pl. Response"), ¶ 2.)

At the time of the accident, Plaintiff Kaur was employed by Petro as a machine operator. (Complaint, p. 1.) On May 2, 2004, Plaintiff Kaur's hand came in contact with a rotating saw blade. (Def. 56.1 Stmt., ¶ 3; Pl. Response, ¶ 3.) The saw blade was an Everett® Cut-Off Saw, manufactured by Everett Industries, Inc. (See id.) Plaintiff Kaur contends that the saw blade was purchased by Dickerman Power Cut-Off Saws[2] and used as a component in the "Automatic Dickerman Machine." (Pl. Response, ¶ 3.) The Automatic Dickerman Machine is a semi-automatic, cut-to-length tube cutting machine. (Def. 56.1 Stmt., ¶ 3; Pl. Response, ¶ 3.) It is designed as a semi-automatic cut-off saw equipped with a pneumatic feed. (Def. 56.1 Stmt., ¶ 5; Pl. Response, ¶ 5.) The feed system is comprised of three clamps, two of which are stationary. (Id.) The stationary clamps are located on either side of the saw blade. (Def. 56.1 Stmt., ¶ 6; Pl. Response, ¶ 6.) These clamps close simultaneously to hold the tubing material in place, while the saw blade moves downward from its hinge point, located on the back of the blade arm. (Id.) After the cut is completed, the stationary clamps open, while the third clamp closes and pushes

---

[2] Defendant Standex International Corp. acquired the Dickerman line of cut-off saws in an asset purchase sale in 1968. The Dickerman line was then sold by Standex in 1978. According to Defendants, the machine at issue in this case was purchased in April 1976, by Plaintiff Kaur's employer, Petro. (Def. 56.1 Stmt., ¶ 3, n.3.)

the product forward, allowing the cutting cycle to be repeated. (Def. 56.1 Stmt., ¶ 7; Pl. Response, ¶ 7.)

Defendants contend that this feed system allowed for operation of the machine, without the need for machine operators to place their hands into the immediate area of the saw blade, presumably to advance the cut product manually. (Def. 56.1 Stmt., ¶ 7) (citing deposition transcript of Alan Pinsky, Chief Engineer for Petro, Ex. C, attached to the Certification of Joseph K. Cobuzio ("Cobuzio Cert.").) Defendants also assert that the machine's controls are located in such a way as to permit its operation without placing the operator in a potentially dangerous situation. (Def. 56.1 Stmt., ¶ 8.) Plaintiffs deny both of Defendants' statements. (Pl. Response, ¶ 7, 8.)

In its original state, the Everett® Cut-Off Saw has guards surrounding a large portion, if not the entirety of the blade. (Def. 56.1 Stmt., ¶ 9; Pl. Response, ¶ 9.) In manufacturing the Automatic Dickerman Machine, Dickerman modified the original guard design by removing a portion of the bottom to accommodate the pneumatic feed clamps. (Def. 56.1 Stmt., ¶ 10; Pl. Response, ¶ 10.)

At the time of the accident, Plaintiff Kaur was inserting a new length of tubing into the machine.[3] (Def. 56.1 Stmt., ¶ 11; Pl. Response, ¶ 11.) Defendants contend that Plaintiff Kaur has a vague and insufficient recollection of the accident, and has been unable to describe precisely how the accident occurred, or what position the machine was in when she was injured.

---

[3] The parties dispute whether Plaintiff Kaur employed proper safety procedures while operating the machine. Nonetheless, the parties agree that an analysis of Plaintiff Kaur's misuse of the machine is not appropriate at this juncture. (See Defendants' Reply Brief in Support of the Motion for Summary Judgment ("Def. Reply Br."), p. 5, n.4.) Thus, this Court need not, nor has it been asked to, resolve any dispute related to misuse or comparative negligence.

(Def. 56.1 Stmt., ¶ 15.) Plaintiff Kaur refutes Defendants' characterization of her recollection, which Plaintiff Kaur claims was gleaned from discrete deposition excerpts, and not the entirety of the record. (See Pl. Response, ¶ 15; Plaintiffs' Brief in Opposition to the Motion for Summary Judgment ("Pl. Opp. Br."), p. 6.) Plaintiff Kaur did recall that "[h]er hand slipped and came in contact with the rotating blade." (Pl. Response, ¶ 15.)

## II. PROCEDURAL POSTURE

Plaintiffs filed their initial complaint with the Superior Court of New Jersey, Law Division, Union County, asserting causes of action for strict liability (Count I), breach of warranty (Count II), negligent design and negligent manufacture (Count III),[4] and loss of

---

[4] Although Plaintiffs' Complaint details various common law personal injury claims, such claims have been subsumed under the Products Liability Act ("PLA") in New Jersey. Under N.J. Stat. Ann. § 2A:58C-1, "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty" falls under the term "products liability action." "The PLA is the exclusive remedy for personal injury claims arising out of product use." Koruba v. American Honda Motor Co., Inc., 935 A.2d 787, 795 (N.J. Super. Ct. App. Div. 2007) (citation omitted) (noting further that "negligence is not a basis for liability under the PLA."); see also Canty v. Ever-Last Supply Co., 685 A.2d 1365, 1371 (N.J. Super. Ct. Law Div. 1996) (dismissing plaintiffs' common law negligence claims because they are superseded by state legislation); "[T]he causes of action for negligence, strict liability, and implied warranty have been consolidated into a single product liability cause of action, [pursuant to the PLA]." Green v. General Motors Corp., 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998) (citation omitted).

Under the PLA,

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it:
>
> > a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or

4

consortium (Count IV). On May 25, 2006, Defendants filed a Notice of Removal with this Court. Jurisdiction is proper with this Court, pursuant to this Court's diversity jurisdiction, under 28 U.S.C. § 1332(a). Plaintiffs' and Defendants' citizenship is diverse, and the amount in controversy exceeds $75,000.00.

Discovery was conducted in the instant matter. Thereafter, Defendants moved for summary judgment on all of Plaintiffs' claims. Defendants posit that Plaintiffs have failed to put forth evidence that the Automatic Dickerman Machine suffers from a design defect or a manufacturing defect.[5] Defendant also asserts that Plaintiffs fail to put forth any evidence regarding the "failure to warn" claim. Plaintiffs concede that there is no evidence supporting the

---

Cont.

       b. failed to contain adequate warnings or instructions, or

       c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.

     In other words, a plaintiff's claims under the PLA must allege a manufacturing defect, failure to warn, and/or a design or product defect. Here, Plaintiffs' Complaint articulates three claims, which are not framed as PLA claims. The parameters of the PLA require that these claims not survive in their current form. Counts I and II alleging strict liability and breach of warranty, respectively, are not cognizable under the PLA, because they do not assert claims for a manufacturing defect, failure to warn, or design defect, as noted above. Count III, which articulates negligent design and negligent manufacturing claims is likewise not cognizable under New Jersey law, unless analyzed as a PLA claim; specifically, a manufacturing or design defect claim. This Court shall apply the PLA's analysis to Count III.

    [5] This Court finds that Defendants are entitled to summary judgment as to any claim for manufacturing defect. In New Jersey, if a product deviates from a manufacturer's specifications, and that deviation causes an individual injury, the manufacturer will be liable. O'Brien v. Muskin Corp., 463 A.2d 298, 304 (N.J. 1983). There is no evidence in the record that the Everett® Cut-Off Saw or the Automatic Dickerman Machine deviated from manufacturer specifications. Plaintiffs do not contest this in their submission to the Court.

failure to warn claim. (See Pl. Opp. Br., p. 5.) Defendants are entitled to summary judgment as to that claim. Plaintiffs oppose Defendants' motion for summary judgment as to the design defect claim.

### III. CHOICE OF LAW

The parties agree that New Jersey substantive law governs this personal injury action. This Court agrees. A district court sitting in diversity jurisdiction over state law claims applies the choice-of-law rules of the forum in which it sits, in this case, New Jersey. See Warner v. Auberge Gray Rocks Inn, Ltee., 827 F.2d 938, 939-40 (3d Cir. 1987) (quoting Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)).

New Jersey employs the "governmental-interest" choice-of-law test for tort claims, applying the law of "the state with the greatest interest in governing the particular issue" in the underlying litigation. See Marks v. Struble, 347 F. Supp. 2d 136, 142 (D.N.J. 2004) (citing Veazey v. Doremus, 510 A.2d 1187 (N.J. 1986)). New Jersey has the most substantial interest in the outcome of this litigation. Plaintiffs are New Jersey residents. The Automatic Dickerman Machine was purchased in New Jersey. The accident involved here took place in New Jersey.

### IV. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material

7

fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

## V. DISCUSSION

Defendants seek the grant of summary judgment based on Plaintiffs' inability to establish its prima facie case for its product or design defect claim. "Generally, to succeed under a strict-liability design-defect theory, a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect [factually and proximately] caused the injury to a reasonably foreseeable user." Jurado v. W. Gear Works, 619 A.2d 1312, 1317 (N.J. 1993).[6]

---

[6] A plaintiff must also show

> that the product is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes. The decision whether a product is defective because it is not reasonably fit, suitable and safe for its intended purposes reflects a policy judgment under a risk-utility analysis. That analysis seeks to determine whether a particular product creates a risk of harm that outweighs its usefulness. Risk-utility analysis is especially appropriate when a product may function satisfactorily under one set of circumstances and yet, because of a possible design defect, present an unreasonable risk of injury to the user in other situations. Under a risk-utility analysis, a defendant may still be liable when a plaintiff misused the product, if the misuse was objectively foreseeable. The concept of foreseeable misuse extends to cases in which a product has been substantially altered from its original design. Hence, the plaintiff in a design-defect products-liability suit may succeed even if the product was misused, as long as the misuse or alteration was objectively foreseeable.

Jurado v. W. Gear Works, 619 A.2d at 1317 (internal citations omitted).

Defendants argue that principal among Plaintiffs' deficiencies is the inability to create any issue as to a material fact on causation, specifically, proximate cause. In New Jersey,

> Even in a strict liability action, a plaintiff must prove causation. Causation generally consists of two elements. First, a plaintiff must show that the defendant's act or omission was the factual, or "but for," cause of the injury. Every occurrence related to an event such that, but for the event, the occurrence probably would not have happened is a factual cause of an injury. Second, even under a strict-liability standard, a plaintiff must prove that this factual cause was a proximate cause of the injury.

Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 722 A.2d 515, 524 (N.J. 1999).

"Generally, the determination of proximate cause is an issue of fact for the jury. Only in the rare case in which it appears to the court highly extraordinary that [the actor's conduct] should have brought about the harm, will courts remove the issue of proximate cause from the jury." Id., at 525 (internal quotation omitted).

Here, Defendants assert that Plaintiff Kaur fails to remember exactly how the accident occurred that resulted in her injury. Defendants posit that Plaintiff Kaur "has not been able to describe definitively how the accident occurred," effectively destroying any possibility of showing proximate cause. (Def. Reply Br., p. 9.) Indeed, it is Defendants' contention that "Plaintiff was only capable of describing the accident in generalities," and points to a specific two-sentence excerpt from Plaintiff Kaur's deposition testimony as proof. (Defendants' Brief in Support of the Motion for Summary Judgment, p. 4.) This excerpt, in total, reads, "As I pushed the pipe with the left hand and brought it with the right hand to put into the grip, somehow my hand slipped from that place further up. I don't know how it went there." (Id., citing Ex. D., attached to Cobuzio Cert., 48:6-9.) Defendants urge this Court conclude that this statement

9

represents the entirety of Plaintiff Kaur's description of the accident, and that this statement is so inconclusive as to be dispositive of the motion.[7]

The record shows that Plaintiff Kaur does describe the accident with clarity and specificity, as reflected in both her deposition testimony and the Answers to Interrogatories. Plaintiff Kaur, only three questions after the statement cited by Defendants, provides further clarification:

> "Q. What I'm saying ma'am, do you recognize these blocks one and two as the clamps of the machine which grabs the pipe?
>
> A. When I was pushing the pipe, it should grip automatically, because since it did not grip, I went further up and my hand was caught into that area."

(Id. at 48:18-24.)

The Answers to Interrogatories offer an additional explanation of how the accident occurred:

> "While I was 'feeding' the plastic into the machine with my left hand and while making sure the plastic was properly on the machine with my right hand, my right hand was moving from left to right. The saw was to my right. The accident occurred when my right hand moved too far to my right causing it to be cut by the saw as it was coming down to cut the plastic. There was nothing to guard my hand from coming into contact with the saw."

(Ex. C, attached to Kaplan Cert., at ¶1.)

---

[7] In asserting this argument, Defendants ignore record evidence, including further of Plaintiff Kaur's additional deposition statements on the same cited page. In essence, Defendants place undue weight on a single confused statement in the midst of a contentious deposition with a Hindi interpreter. The deposition transcript reflects numerous objections by Plaintiffs' counsel, disputes over translations, and confusion on the part of the interpreter. (Ex. B, attached to the Certification of Ronald S. Kaplan ("Kaplan Cert.").)

Plaintiff Kaur describes an accident in which her hand, moving from left to right to position the plastic for cutting, entered the cutting area of the blade and injured her. Plaintiff Kaur's statements raise a genuine issue as to a material fact - the proximate cause of Plaintiff Kaur's injury. Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that a defect in the design of the machine was the proximate cause of the injury to Plaintiff Kaur.

Defendants also assert that Plaintiff Kaur "cannot recall whether the cutting head was traveling up or down at the time she was injured." (Def. Reply Br. at 7.) This too, Defendants contend, is dispositive, because it negates the possibility of proving proximate cause. (Id.) Defendants claim that Plaintiffs' proposed alternate designs might have prevented this injury if the accident had occurred while the cutting head was up, but not while it was down. (Id.) As support for this assertion, Defendants point to a reply to a hypothetical posed to Plaintiffs' expert, Thomas Cocchiola:

> Q. Okay. Hypothetically speaking, someone placed their hands under any saw blade, no matter how well guarded, they would be injured, would they not?
>
> A. Yes.
>
> Q. In fact, there's no guard in the world that could prevent that?
>
> A. And the saw was in a cutting cycle, yes.

(Ex. D, attached to Kaplan Cert., at 96:17-97:1.)

Defendants cite Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996), in support of their argument that, in order to withstand summary judgment, Plaintiff Kaur must

11

remember the position of the saw at the time of injury. The Fedorczyk plaintiff fell in a bathtub and claimed that the defendant cruise line had failed to equip the tub properly, although it had four anti-skid strips. Id. at 72. The Third Circuit upheld the district court's grant of summary judgment because the plaintiff could not recall whether she was standing on the anti-skid stripping when she fell. Id. at 74. If the Fedorczyk plaintiff had been standing on the strip, she would appropriately have been precluded from arguing that the lack of anti-skid stripping was the proximate cause of her injury.

Defendants attempt to analogize Fedorczyk to the instant action. Specifically, Defendants argue that Plaintiff Kaur's inability to recall the position of the saw at the time of her accident is likewise dispositive of the summary judgment motion, as in Fedorczyk. Further, Defendants argue that Plaintiffs' proposed alternative design would only be effective in preventing operator contact with the cutting head in the up, but not in the down, position. Because Plaintiff Kaur cannot remember the position of the saw, Defendants contend, she cannot conclusively state that the unguarded blade proximately caused her injury, or that an alternative design would have prevented the injury.

Plaintiffs' Engineering Report directly contradicts Defendants' argument. Plaintiffs' expert, Thomas Cocchiola, proposes safeguarding alternatives that would seem to prevent the hands of an operator from reaching the cutting area, regardless of whether the cutting head was up or down. (Ex. A, attached to Kaplan Cert., at 6.) "A point of operation enclosure guard could easily have been constructed . . . that permits visibility without allowing access to hazards." (Id.)

12

Defendants' summary judgment motion does not contemplate this safeguard alternative. Thus, a genuine issue as to a material fact necessarily exists regarding Plaintiffs' design defect allegation and whether the alleged defect proximately caused Plaintiff Kaur's injury. Defendants are not entitled to summary judgment as to this claim.

### VI.  CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, pursuant to FED. R. CIV. P. 56, is granted as to Plaintiffs' failure to warn claims and manufacturing defect claims; and is denied as to Plaintiffs' remaining claims–design defect and loss of consortium.

Date: July 6, 2009

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.